KOLIN C. TANG (SBN 279834)
**SHEPHERD, FINKELMAN, MILLER**
 **& SHAH, LLP**
11755 Wilshire Blvd, 15th Floor
Los Angeles, CA 90025
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email:  ktang@sfmslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX WILSON, Individually and On Behalf of All Others Similarly Situated, | CIVIL ACTION NO. 2:18-cv-3473 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | |
| THE TENNIS CHANNEL, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, Alex Wilson ("Plaintiff"), by and through his attorneys, files this action on behalf of himself and all others similarly situated against Defendant, The Tennis Channel, Inc. ("Defendant"), and alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this action individually and on behalf of a proposed nationwide class (more fully defined below), for the benefit and protection of all current and former purchasers of Defendant's Tennis Channel Plus live content and video streaming service ("TC Plus").   As alleged herein, Defendant

deceptively markets and advertises TC Plus as providing access to live content when, in fact, it does not, or only provides access to select live content in a manner that is directly contrary to Defendant's advertisements.

2.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers to stop Defendant's false and misleading advertising relating to the sale of TC Plus and to obtain redress for those who have purchased TC Plus across the United States.  Plaintiff alleges violations of the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* ("CLRA"); Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"); and False Advertising Law, California Business and Professions Code, § 17500, *et seq.* ("FAL").   In the alternative, Plaintiff alleges violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1, *et. seq.* ("ICFDBPA"); violation of the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 510/2, *et. seq.* ("IUDTPA"); and for unjust enrichment on behalf of an alternative Illinois state class defined below.

3.     At all relevant times, Defendant has deceptively marketed, advertised, and sold TC Plus as allowing subscribers to view live tennis programs and matches, when, in fact, many of the advertised programs are not available live.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed class has at least 100 members, and this is a class action in which certain of the class members (including Plaintiff) and Defendant are citizens of different states.

5.     Venue is proper in this judicial District under 28 U.S.C. § 1391 because Defendant is a resident of this judicial District and does business throughout this District and a substantial part of the acts and omissions giving rise

to Plaintiff's claims occurred in or emanated from this District.  Plaintiff resides in this District and purchased a TC Plus subscription in this District.

6.     At all pertinent times, Defendant was engaged in the marketing, advertisement, and sale of TC Plus subscriptions, which is the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

7.     Plaintiff is and, at all times relevant to this action has been, a resident of Peoria, Illinois, and, thus, is a citizen of Illinois.

8.     Defendant is owned by Sinclair Television Group, Inc., a subsidiary of Sinclair Broadcast Group, Inc.  Defendant is headquartered in Santa Monica, California, and, thus, is a citizen of California.  Defendant markets and sells TC Plus throughout the United States, including in this District.

## SUBSTANTIVE ALLEGATIONS

9.     This is an action brought against Defendant on behalf of Plaintiff and all persons who purchased a TC Plus subscription in the United States, and, in the alternative, in Illinois.

10.     TC Plus is a digital subscription service that has been available for purchase from Defendant since approximately May of 2014.  The current cost of TC Plus is $89.99 per year.  The subscription purports to allow users to access "all of the Tennis Channel Plus content."[1]

11.     Defendant deceptively markets and advertises TC Plus as giving subscribers "access to hundreds of hours of live tennis throughout the year including ATP World Tour, WTA, Davis Cup, Fed Cup, and much more."[2] Subscribers are promised the ability to "Watch Anytime, Anywhere" on "Apple TV, iPhone, iPad, and Android."[3]

---

[1] https://tennischanneleverywhere.com/subscribe, *last accessed* March 14, 2018.

[2] https://tennischanneleverywhere.com/subscribe, *last accessed* March 14, 2018.

[3] *Id.*

12.    Defendant's website contains a video advertisement that deceptively markets TC Plus as providing "even more live, more matches, and more exclusive on demand content.  Stay connected to your favorite sport on the couch or on the go.  Only on Tennis Channel Plus."[4]

13.    Defendant further markets and advertises the following tournaments as being available, live, on TC Plus:

> What Tennis tournaments do I get access to when I subscribe to Tennis Channel Plus?
> A: By subscribing to Tennis Channel Plus you gain access to a premier 24x7 livestreaming sports and special access to livestream the following tournaments and matches not found on Tennis Channel. Tournaments and dates subject to change:
> Dec. 29-Jan. 6
> Hopman Cup- Live and VOD
> *** JANUARY TOURNAMENTS ***
> Jan. 6-13
> ATP Sydney - Live and VOD
> Jan. 8
> 0Fast4Sydney - Live and VOD
> Jan. 8-10
> WTC Adelaide - Live and VOD
> Jan. 9-12
> Australian Open Qualifiers - Live and VOD
> *** FEBRUARY TOURNAMENTS ***
> Feb. 2-4
> Davis Cup First Round - Live and VOD
> Feb. 5-11
> Quito - Live and VOD
> Feb. 9-11
> Sofia - Live and VOD
> Feb. 10-11
> Fed Cup First Round - Live and VOD
> Feb. 12-18
> ATP Rotterdam - Live

---

[4] https://tennischaneleverywhere.com/watchnow/b6620c32-a761-4c9d-86f2-31fbd3d058fc, *last accessed* March 14, 2018.

Feb. 12-18
ATP Buenos Aires - Live and VOD
Feb. 19-25
ATP Rio de Janeiro - Live
Feb. 20-25
ATP Marseille - Live and VOD
*** MARCH TOURNAMENTS ***
Mar. 2-4
ATP Sao Paolo - Live and VOD
Mar. 5-18
WTA Indian Wells - Live
Mar. 9-Apr. 1
WTA Miami - Live
*** APRIL TOURNAMENTS ***
Apr. 1-8
WTA Charleston - Live and VOD
Apr. 6-8
Davis Cup - Live and VOD
Apr. 9-15
ATP Marrakech - Live and VOD
Apr. 14-22
ATP Monte Carlo - Live
Apr. 20-22
Fed Cup Semifinals - Live and VOD
Apr. 23-29
ATP Barcelona - Live
Apr. 30-May. 6
ATP Munich - Live and VOD
*** MAY TOURNAMENTS ***
Apr. 30-May. 6
ATP Istanbul - Live and VOD
May. 6-13
ATP Madrid - Live
May. 14-20
ATP Rome - Live
May. 21-26
ATP Geneva - Live and VOD
May. 21-25
Roland Garros Qualfying - Live and VOD
*** JUNE TOURNAMENTS ***
May. 27-Jun. 10

Roland Garros - Live and VOD
June. 11-17
ATP s'Hertogenbosch - Live and VOD
June. 11-17
ATP Stuttgart - Live and VOD
June. 18-23
ATP Halle - Live
June. 18-23
ATP London - Live
June. 26-30
The Boodles - Live
June. 15-Aug. 4
World Team Tennis - Live and VOD
*** JULY TOURNAMENTS ***
July. 16-22
ATP Umag - Live and VOD
Jul. 30-Aug. 5
ATP/WTA Washington D.C. - Live and VOD
July. 30-Aug. 5
ATP Kitzbuhel - Live and VOD
*** AUGUST TOURNAMENTS ***
Aug. 13-19
WTA Cincinnati - Live
*** SEPTEMBER TOURNAMENTS ***
Sep. 14-16
Davis Cup Semifinals - Live and VOD
Sep. 17-23
ATP St. Petersburg - Live and VOD
Sep. 18-23
ATP Metz - Live and VOD
*** OCTOBER TOURNAMENTS ***
Oct. 15-21
ATP Moscow - Live and VOD
Oct. 29-Nov. 4
WTA Zhuhai - Live

https://tennischanneleverywhere.com/help TC Plus Tournaments, *last accessed* March 14, 2018.

14. Defendant utilizes, among other ways, Tennis.com to deceptively market and advertise the live content available on TC Plus.[5]  For example, on February 12, 2018, Defendant claimed, through Tennis.com, that:

> The combination of Tennis Channel and Tennis Channel Plus will now have live coverage from the first round through to the final 19 of the biggest tournaments on the ATP World Tour calendar: seven Masters 1000s tournaments (Monte Carlo, Madrid, Rome, Canada, Cincinnati, Shanghai and Paris) and all 12 of the ATP World Tour 500 tournaments (Rotterdam, Rio de Janeiro, Dubai, Acapulco, Barcelona, Halle, Queen's Club, Hamburg, Beijing, Tokyo, Basel and Vienna).

> This essentially doubles the number of tournaments available to Tennis Channel Plus subscribers, and you can watch it all, regardless of whether or not you have a Tennis Channel TV subscription.

> *        *        *

> This expansion couldn't have come at a more exciting time: This week Roger Federer, who's fresh off his 20th Grand Slam title at the Australian Open, has a chance to become No.1 again at the ABN AMRO World Tennis Tournament in Rotterdam, the Netherlands – an ATP World Tour 500-level event.

> If he reaches the semifinals, he'll be No.1 for the first time since the week of October 29, 2012.

> **You can watch every round of Federer's quest for No.1 live on Tennis Channel Plus this week.**

http://www.tennis.com/pro-game/2018/02/tennis-channel-taking-its-atp-coverage-another-level/72048/ [Emphasis in original], *last accessed* March 14, 2018.

---

[5] In March of 2017, Sinclair Broadcasting acquired The Tennis Media Company, owner of the website Tennis.com and Tennis Magazine.

**Plaintiff's Experience with TC Plus**

15.   On February 14, 2018, Plaintiff purchased a subscription for TC Plus.

16.   On the date of purchase, Plaintiff was unable, despite Defendant's marketing and advertisements to the contrary, to watch live the ABN AMRO World Tennis Tournament match of Roger Federer vs. Ruben Bemelmans.

17.   Plaintiff promptly contacted Defendant via its support chat feature. Below is the exchange between Plaintiff and Defendant's support representative:

> **Alex Wilson**
> I just bought TC Plus and am not able to watch the Federer match as it says that is only on the actual TC
>
> Mike joined the chat
>
> **Customer Service**
> Hi there, thanks for your message.
> **Mike**
> Hello
> I'm sorry, the Federer game it's only available on Tennis Channel.
> **Alex Wilson**
> The website says the ATP Rotterdam is available on TC Plus
> why is this not the case?
> **Mike**
> Please hold on we are investigating this.
> **Alex Wilson**
> Ok thanks. This is what the website says for TC Plus Tournemanets [sic] Feb. 12-18 ATP Rotterdam - Live
> **Mike**
> You are welcome
> Do you have anymore questions?
> **Alex Wilson**
> I just need an answer as to why I cant watch the Rotterdam Tournament on TC Plus when that is what the website says.
> **Mike**

Please hold on we are investigating this.

**Alex Wilson**

Do you know how long the investigation will take and if it is a while how will I get an answer?

**Mike**

I'm sorry for the inconvenience, this might take some time.

**Alex Wilson**

ok how will you get back in touch with me. Via email?

**Mike**

I'm sorry, but Federer match will only be available for Tennis Channel

**Alex Wilson**

Then I want my money back as this is clearly false advertising

**Mike**

For further content information, you can see the Tennis Guide, to see an updated list of the content https://tennischanneleverywhere.com/watchnow

**Alex Wilson**

Ok I will need a refund as your website clearly states the Rotterdam tournament is available on TC Plus

**Mike**

I'm sorry but a Refund does not apply due to our terms and conditions.

**Alex Wilson**

This is horrible. How can you advertise that the Rotterdam Tournament is available and then take my $90 and then it is just not available.

This is false advertising

I would like to speak to someone in charge over the phone about this

How can I speak with someone in charge?

**Mike**

We do not have phone support, I'm really sorry but a refund does not apply

**Alex Wilson**

This is seriously not legal. You really need to get someone in charge involved here because this is

clearly false advertising and I am willing to pursue this further if need be.

Terms and conditions due not precede false advertising in a court of law

**Mike**
I understand, you can check our guide and see what is offered

**Alex Wilson**
Ok I will be consulting an attorney over the false advertising. So I would strongly suggest you escalate this to your boss.

**Mike**
I completely understand, thank you for your feedback

**Alex Wilson**
Ok so just to be clear you will not be notifying your boss correct?

I just want an answer to this so I can proceed with a legal route if need be?

**Mike**
No, I will not notify my boss because of our terms and conditions a refund does not apply, my superiors are the ones that put the terms and conditions

**Alex Wilson**
Ok thanks for the reply. I have already contacted an attorney and will unfortunately have to address this through the legal system. This is very disappointing

**Mike**
I'm sorry once again.

18.    As seen above, Defendant readily admitted that the live coverage of the Federer match was not available, contrary to its false and misleading marketing and advertising.  Despite the admission that the event was not available as advertised, Defendant, nevertheless, refused to refund Plaintiff's purchase.

19.    Following the above exchange with customer service, Plaintiff's spouse contacted Defendant's Customer Service Department via email on

February 19, 2018, again to request a refund.    The Customer Service representative falsely claimed that the program was available live and again denied Plaintiff a refund.   Below is a copy of the email exchange:

On Mon, Feb 19, 2018 at 10:12 AM, mgilera@cleeng.com (Cleeng Consumer) <support@consumer-cleeng.zendesk.com> wrote:
## Please do not write below this line ##

Your request (#88816) has been updated. Reply to this email or click the link below:
https://support.cleeng.com/hc/requests/88816

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**mgilera@cleeng.com** (Cleeng Consumer)

Feb 19, 17:12 CET

Hi Sarah,

Thank you for contacting us! My name is Maria and I'm a Customer Success Specialist from Tennis Channel.

Can you please confirm if you are referring to the Tennis Channel Plus or just the Tennis Channel itself? As I am unable to locate any account for the Tennis Channel Plus under the email address sarahwilson713@gmail.com.

Thank you and I look forward to your response.

Kind Regards,

Maria
Tennis Channel Customer Success Team

My husband bought the subscription under the email bblegend13@me.com
The subscription was for the Tennis Channel Plus.
It was promoted by Tennis Channel Plus **"You can watch every round of Federer's quest for No.1 live on Tennis Channel Plus this week."**
We were unable to watch Federer through this subscription and would like a refund as this is clearly false advertisement by Tennis Channel Plus.

Would you please be able to grant this request?

Thank you
Alex and Sarah Wilson

Your request (#88816) has been updated. Reply to this email or click the link below: https://support.cleeng.com/hc/requests/88816

**Nathalie** (Cleeng Consumer)

Feb 20, 03:27 CET

Hi Sarah,

Thanks for waiting. Matches of Roger Federer is available on your TC Plus subscription (Please see attached screenshot).

I simply searched for this name on the search bar. Just click on the magnifying glass at the top right corner of the page to do that.

Kind Regards,

Maria
Tennis Channel Customer Success Team

I understand this is available now, but this was not available live when the Rotterdam ABN AMRO World Tennis Tournament was actually playing live. It was not available live when the tournament was going on. This is false advertisement because the tournament was not available when the tournament was playing as it was advertised on the website.

Can I please have my request for a refund of the Tennis Channel Plus for user bblegend13@me.com?

Thank you
Alex and Sarah Wilson

**Nathalie** (Cleeng Consumer)

Feb 20, 03:41 CET

Hi Sarah,

It was available live. The contents are there so we will not be able to grant your refund request.

> Kind Regards,
>
> Maria
> Tennis Channel Customer Success Team

20.    On February 23, 2018, Plaintiff was, once again, unable, despite Defendant's marketing and advertisements to the contrary, to watch live the ATP Rio de Janeiro Tournament match of Nicolas Jarry vs. Pablo Cuevas.

21.    Plaintiff promptly contacted Defendant via its support chat feature. Below is the exchange between Plaintiff and Defendant's support representative:

**Alex Wilson**
Hello- I bought the TC Plus subscription and it says the ATP Rio de Janeiro tournament is available, but it does not appear to be available for TC Plus when I log in. Can you please explain why I cannot view the Rio tournament?

Chat started
Mike joined the chat

**Customer Service**
Hi there, thanks for your message.
**Mike**
Hello
**Alex Wilson**
Hello- I bought the TC Plus subscription and it says the ATP Rio de Janeiro tournament is available, but it does not appear to be available for TC Plus when I log in. Can you please explain why I cannot view the Rio tournament?
**Mike**
Please search on the Tennis Channel Guide, if you do not see the content you are looking for, it probably is not available.
https://tennischanneleverywhere.com/watchnow
Do you have any other questions?
**Alex Wilson**

On the list of available TC Plus tournaments Rio is listed as one of the available ones. It does not appear to be available as I am trying to Watch the Jerry vs Cuevas match and it wants me to sign in to the Tennis Channel with my cable subscription. Can you confirm that this cannot be watched on TC Plus?

**Mike**
Correct, this game is only available for Tennis Channel

**Alex Wilson**
Ok thank you

**Mike**
You are welcome
Do you have any more questions?

**Alex Wilson**
No

Rate This Chat

**Mike**
Have a good day!

22.　　Once again, Defendant readily admitted that the live coverage was not offered as advertised and not available to TC Plus subscribers.

**A. Class Members' Experiences with TC Plus**

23.　　Plaintiff's experience mirrors those of numerous other TC Plus purchasers.  The internet contains numerous complaints from purchasers who, like Plaintiff, were unable to view Defendant's advertised live content.  The following is a sample of complaints appearing in one online forum:

Not very happy.  I got the subscription last year in June.  First of all they did not explain that tennis channel plus subscription does not cover tennis channel and the live matches are not available on plus.  You have to have separate free subscription for tennis channel thru cable/satellite TV service provider.  This year they posted all Australian Open matches on Tennis Channel Plus for subscribers.  But when I tried to access, it keeps asking me to sign in or subscribe. I tried to get help and they submitted a work order to their tech team.  It's been more than two weeks and it has not been resolved.  I keep emailing them for the status of case, and though they were

very courteous and apologetic, the response was Tech team is looking into the issue, and asked me to cancel the subscription in order to avoid automatic renewal, and they will sort things out. Why would it automatically renew before one year subscription ends in June? I cancelled my subscription and let them know. I would not recommend getting subscription for tennis channel plus to anyone.

Posted by Moe K. of Snellville, GA on February 24, 2018 on https://www.yelp.com/biz/tennis-channel-santa-monica-2, *last accessed* March 6, 2018.

Tennis channel EVERYWHERE does not make it clear that the subscription for for [sic] Tennis Channel Plus ONLY - it is NOT for TENNIS CHANNEL (unless you already have Tennis Channel with a TV Provider). And if you make this mistake and want a refund - they do not offer one. I had to stop payment via my credit card company.

Posted by Gary L. of San Francisco, GA on February 12, 2018 on https://www.yelp.com/biz/tennis-channel-santa-monica-2, *last accessed* March 6, 2018.

Do not subscribe to Tennis Channel Everywhere or TC Plus unless you want to click on videos that you can watch all day for free on youtube. You will not have access to live TV matches on The Tennis Channel unless you have a paid cable or sattellite [sic] subscription service with The Tennis Channel in your package!!! Don't pay $90 for access to videos of matches that have already been played. Also, I couldn't get this to work on my MacBook Pro, immediately cancelled and THEY WOULD NOT REFUND MY MONEY. Horrible way to treat your customers.

Posted by Katherine W. of San Francisco, CA on April 22, 2017 on https://www.yelp.com/biz/tennis-channel-santa-monica-2, *last accessed* March 6, 2018.

24.     Defendant's marketing and advertising practices are clearly meant to mislead consumers as to the availability of live content on TC Plus. As a direct and proximate result of Defendant's conduct, Plaintiff and the class have suffered injury in fact and have lost money. Defendant, despite having knowledge that its

representations are misleading to Plaintiff and the class, continues to market and advertise TC Plus in a deceptive manner.

25.     Plaintiff and the Class are at risk of suffering further injury if the relief sought is not granted.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this lawsuit, both individually and as a class action, on behalf of similarly situated purchasers of TC Plus, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

27.     The classes ("Class" or "Classes") that Plaintiff seeks to represent are defined as follows:

**Nationwide Class:**
All persons in the United States of America who purchased Defendant's TC Plus services at any time between January 1, 2017 and the present.

**Alternative Illinois State Class:**
All persons in Illinois who purchased Defendant's TC Plus services at any time between January 1, 2017 and the present.

Excluded from the Class are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

28.     **Numerosity/Impracticability of Joinder:** There are so many members of the Class that joinder of all members is impracticable.  Plaintiff estimates that there are thousands of members in the Class.  The members of the Class are readily identifiable from information and records in Defendant's possession, custody or control.  The disposition of these claims will provide substantial benefits to the members of the Class.

29.   **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Class. These common legal and factual questions, which do not vary from members of the Class, and which may be determined without reference to the individual circumstances of any members of the Class, include, but are not limited, to the following:

a)   whether Defendant's marketing, advertising and promotion of its TC Plus service was false and misleading;

b)   whether Defendant concealed facts from Plaintiff and members of the Class about the availability of live content on TC Plus;

c)   whether Defendant knew or should have known that its representations were false, or that the representations omitted material information;

d)   whether Defendant's conduct was a violation of the CLRA;

e)   whether Defendant's conduct was a violation of the UCL;

f)   whether Defendant's conduct was a violation of the FAL;

g)   whether Defendant's conduct was a violation of the ICFDBPA;

h)   whether Defendant's conduct was a violation of the IUDTPA;

i)   whether Defendant has been unjustly enriched by its conduct, as alleged herein;

j)   whether Defendant's conduct as alleged herein violates public policy; and

k)   whether Plaintiff and the members of the Class are entitled to damages, restitution, equitable relief and/or other damages and other relief, and, if so, the amount and nature of such relief.

30.   **Typicality and Adequacy:**   Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent

and protect the interests of the proposed Class.  Plaintiff does not have any interests antagonistic to those of the Class.  Plaintiff's counsel are experienced in the prosecution of this type of litigation.  The questions of law and fact common to the members of the Class, some of which are set out above, predominate over any questions affecting only individual members of the Class.

31.  **Superiority:**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for members of the Class to prosecute their claims individually.  The litigation and trial of the Class-wide claims are manageable.

32.  Unless a class is certified, Defendant will improperly retain monies received as a result of its conduct from Plaintiff and members of the Class.  Unless Defendant is required to change its unfair and deceptive practices, Defendant will continue to commit the violations and the members of the Class, and the general public, will continue to be misled.

33.  Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Consumers Legal Remedies Act –**
**California Civil Code § 1750, *et seq*.**
**On Behalf of the Nationwide Class**

34.  Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

35.  This cause of action is brought under the CLRA.  Plaintiff and the Class are consumers as defined by California Civil Code § 1761(d), and TC Plus constitutes services within the meaning of the CLRA.

36.  Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a)

in connection with transactions intended to result in, and that did result in, the sale of TC Plus to Plaintiff and members of the Class in violation of, *inter alia*, the following provisions:

a.  Representing the services have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b.  Representing the services are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

c.  Advertising services with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d.  Representing a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

e.  Representing the services have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

37.  Plaintiff and other Class members, in purchasing and using TC Plus, did reasonably act in response to Defendant's above representations or would have considered the omitted facts detailed herein material to their purchase decision.  Plaintiff and the Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

38.  The representations regarding TC Plus were material to Plaintiff and members of the Class.  Defendant intended that Plaintiff and Class members would rely on these representations and they did, in fact, rely on the representations.

39.  Plaintiff presently seeks all non-monetary remedies available under the CLRA and reserves the right to amend his Complaint at a later time to seek monetary damages and other relief permitted by the statute after providing Defendant with notice pursuant to California Civil Code § 1782.

40.    Plaintiff and the members of Class also are entitled to recover attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

### COUNT II
**False and Misleading Advertising in Violation of
California Business and Professions Code § 17500, *et seq.*
On Behalf of the Nationwide Class**

41.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

42.    Defendant's acts and practices as described herein have deceived and/or are likely to deceive members of the Class and the public.  Defendant has advertised and stated that TC Plus provides access to live broadcast content when, in fact, it does not, or only selectively does, in direct contradiction to Defendant's marketing and advertisements.

43.    By its actions, Defendant has and continues to disseminate uniform false advertising concerning TC Plus, which advertisements, by their nature, are unfair, deceptive, untrue, or misleading within the meaning of the FAL.  Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

44.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have the likelihood to deceive in that Defendant has failed to disclose the true and actual nature of TC Plus.  Defendant has failed to initiate a public information campaign to alert consumers of TC Plus's true nature, which continues to create a misleading perception of the TC Plus service.

45.    In making and disseminating the statements alleged herein, Defendant should have known its advertisements were untrue and misleading, in violation of the FAL.  Plaintiff and the Class members based their decisions to purchase TC Plus, in substantial part, on Defendant's misrepresentations and

omissions regarding the true nature of TC Plus.  The revenues to Defendant attributable to TC Plus service sold using those false and misleading advertisements amounts to substantial monies paid for the service.  Plaintiff and the Class were injured in fact and lost money as a result.

46.     Defendant intended for Plaintiff and Class members to rely on these representations and omissions and Plaintiff and Class members consequently did rely on Defendant's misrepresentations and omissions.

47.     The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and, therefore, are violations of the FAL.

48.     As a result of Defendant's wrongful conduct, Plaintiff and the Class members request that this Court enjoin Defendant from continuing to violate the FAL.  Such conduct is ongoing and continues to this date.  Plaintiff and the Class are therefore entitled to the relief described below as appropriate for this cause of action.

## COUNT III
### Unlawful, Unfair, and Fraudulent Business Practices in Violation of California Business and Professions Code § 17200, *et seq*.
### On Behalf of the Nationwide Class

49.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

50.     The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

51.     Defendant violated, and continues to violate, the UCL by misrepresenting TC Plus as providing access to live broadcast content when, in fact, it does not, or only selectively does, in direct contradiction to Defendant's marketing and advertisements.

52.     By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL.

Consumers have suffered substantial injury they could not reasonably have avoided other than by not purchasing TC Plus.

53.     Defendant's acts and practices have deceived and/or are likely to deceive Class members and the public and thus constitute a fraudulent business practice.  Defendant uniformly marketed and advertised TC Plus as providing access to live broadcast content when, in fact, it does not, or only selectively does, despite the fact that Defendant knew, or should have known, of TC Plus's real content availability.

54.     As discussed above, Plaintiff and the members of the Class purchased TC Plus directly from Defendant and/or its authorized agents.  Plaintiff and members of the Class were injured in fact and lost money as a result of such acts of unfair competition.

55.     The injuries suffered by Plaintiff and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Class members should have or could have reasonably avoided.

56.     Defendant received the funds paid by Plaintiff and the members of the Class.  Defendant profited by misrepresenting the properties of TC Plus that it otherwise would not have sold.  Defendant's revenues attributable thereto are thus directly traceable to the substantial dollars paid out by Plaintiff and the Class for TC Plus.

57.     Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Plaintiff and the Class will continue to be injured by Defendant's conduct.

58.     Defendant, through its acts of unfair competition, has acquired money from the Class members.  Plaintiff and the Class request this Court to enjoin Defendant from continuing to violate the UCL.

59.   The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.  Plaintiff and the Class, therefore, are entitled to relief described below as appropriate for this cause of action.

## COUNT IV
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, Alternatively, In the Alternative, on Behalf of the Illinois State Class

60.   Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

61.   The ICFDBPA makes it unlawful to employ:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deceptive fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damage thereby.

815 ILCS 505/2.

62.   As detailed throughout the Complaint, Defendant misrepresented that TC Plus provided subscribers with live broadcast content when, in fact, it did not, or only selectively did, in direct contradiction to Defendant's marketing and advertisements.

63.   Defendant violated Section 505/2 of the ICFDBPA by misrepresenting the availability of live programing content on its TC Plus service. Defendant made the misrepresentations described throughout this Complaint with

the intent that Plaintiff and the Illinois State Class rely on them and purchase TC Plus.

64.    Plaintiff and the Illinois State Class were damaged by Defendant's violation.  Plaintiff and the Illinois State Class would not have purchased TC Plus, or would not have paid the purchase price they did, had the facts been known.

## COUNT V
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/2, *et seq.*, Alternatively,
### In the Alternative, on Behalf of the Illinois State Class

65.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

66.    The IUDTPA makes it unlawful to "advertise[] goods or services with intent not to sell them as advertised." 815 ILCS 510/2(a)(9).  It is also unlawful to "engage[] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." *Id*. at (a)(12).  A plaintiff, "[i]n order to prevail in an action under this Act… need not prove competition between the parties or actual confusion or misunderstanding." *Id*. at (b).

67.    As detailed throughout the Complaint, Defendant deceptively marketed and advertised TC Plus as providing subscribers with certain live broadcasts that it, in fact, did not provide, in direct contradiction to Defendant's marketing and advertisements.

68.    Defendant violated Section 510/2 of the IDUTPA by misrepresenting the availability of live programing content on its TC Plus service. Defendant's misrepresentation, as described throughout this Complaint, created a likelihood of confusion on the part of consumers regarding what live programing content was or was not available on TC Plus.

69.    Plaintiff and the Illinois State Class were damaged by Defendant's violation and their subsequent purchases of TC Plus.  Plaintiff and the members

of the Illinois State Class would not have purchased TC Plus, or would not have paid the purchase price they did, had the facts been known.

## COUNT VI
### Unjust Enrichment
### Alternatively, On Behalf Of Plaintiff And The Illinois State Class
### In the Alternative, on Behalf of the Illinois State Class

70.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

71.     This claim is asserted on behalf of Plaintiff and the members of the Illinois State Class against Defendant.

72.     As a direct and proximate result of Defendant's deceptive and misleading conduct as set forth above, Defendant has been unjustly enriched.

73.     Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiff and Illinois State Class members).

74.     It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration and other monies obtained by and from Defendant's wrongful and deceptive conduct in marketing and selling TC Plus to Plaintiff and the Illinois State Class, as detailed in this Complaint.

75.     Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Classes, prays for judgment as follows:

a.     Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class counsel;

b.      Compensatory and other damages for economic and non-economic damages;

c.      Awarding restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class;

d.      An Order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

e.      Statutory pre-judgment and post-judgment interest on any amounts;

f.      Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

g.      Such other relief as the Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:     April 25, 2018              Respectfully submitted,


                                       By: s/ Kolin C. Tang
                                       KOLIN C. TANG (SBN 279834)
                                       SHEPHERD, FINKELMAN, MILLER
                                       & SHAH, LLP
                                       11755 Wilshire Blvd, 15th Floor
                                       Los Angeles, CA 90025
                                       Telephone: (323)510-4060
                                       Facsimile: (866) 300-7367
                                       Email:  ktang@sfmslaw.com

James C. Shah (SBN 260435)
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 East State Street
Media, PA  19063
Telephone: (610) 891-9880
Facsimile:  (866) 300-7367
jshah@sfmslaw.com

Adam J. Levitt
Amy E.Keller
DiCELLO, LEVITT & CASEY
Ten North Dearborn Street, 11th Floor
Chicago, IL 60602
Telephone (312) 214-7900
alevitt@dlcfirm.com
akeller@dlcfirm.com

*Attorneys for Plaintiff and the Proposed Class*